IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FERNANDO PEREZ, SR. (#058790), | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:17-cv-2846-N-BN |
| ELMER TANNER, Sheriff, ET AL., | § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

This *pro se* civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Fernando Perez, Sr., an inmate at the Navarro County Justice Center, has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. The undersigned issues these findings of fact, conclusions of law, and recommendation that the Court should dismiss this action with prejudice.

**Applicable Background**

Perez has sued the Navarro County Sheriff and several of his deputies related to (1) Perez's legal mail allegedly being tampered with and/or thrown in the trash on September 12, 2017 and (2) the handling of Perez's grievance(s) related to that incident. *See* Dkt. Nos. 3 (complaint) & 7 (verified responses to the Court' screening questionnaire). Perez asserts that he has been harmed by these actions because he was not "able to gather and send all necessary documents to [his] attorney to prove [his]

innocence." Dkt. No. 7 at 1. And he is seeking $385,000.00 in monetary damages. *See id.* at 3.

**Legal Standards**

A district court is required to screen a civil action filed *in forma pauperis* ("IFP") and may summarily dismiss that action if it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The same requirement applies to a civil action filed by a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity" regardless whether the prisoner is proceeding IFP. 28 U.S.C. § 1915A; *see Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) ("a suit by a prisoner against state agencies and officers ... is clearly within the ambit of section 1915A" and requires screening "even when a prisoner has paid the required filing fee").

Dismissal for failure to state a claim "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam); emphasis added by *Smith*), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. Indeed, to survive dismissal under the framework established under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that he contends entitle him to relief. *Johnson*, 135 S. Ct. at 347 (citing FED. R. CIV. P. 8(a)(2)-

(3), (d)(1), (e)); *see Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)). The rationale that factual plausibility (as opposed to legal labeling) controls the failure-to-state-a-claim analysis has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

Although a court generally cannot look beyond the pleadings to determine whether claims should be dismissed, the pleadings here include the verified responses to the Court's screening questionnaire [Dkt. No. 7], which are now "part of [Perez's] pleadings," *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)). Through the use of questionnaires – approved "to aid in the determination of whether an IFP complaint is frivolous" – a court is able to "'focus[] precisely on a prisoner's factual allegations, puncturing the conclusion balloon in which they may at first be lodged.'" *Id.* (quoting *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985)). And verified responses to questionnaires promote efficient screening of claims by allowing a plaintiff leave to amend his allegations to plead his best case. *See, e.g., Stevenson v. Dallas Cty. Sheriff Dep't*, No. 3:14-cv-1358-P-BN, 2014 WL 5483003 (N.D. Tex. Sept. 30, 2014) (in which plaintiff's questionnaire responses "made it clear ... that there was no physical injury[,]" which in turn required dismissal of his complaint under 42 U.S.C. § 1997e(e)), *rec. adopted*, 2014 WL 5493254 (N.D. Tex. Oct. 30, 2014); *cf. Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam)

("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

**Analysis**

First, to the extent that Perez names as a defendant an individual named Ronnie Ford, *see* Dkt. No. 7 at 1-2 (alleging that Ford "filed [a] false report" on him and claimed that he "would make [Perez's] life hell"), any claims asserted against Ford should be dismissed.

> "Private individuals generally are not considered to act under color of law," *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005), but "private action may be deemed state action when the defendant's conduct is 'fairly attributable to the State,'" *Priester v. Lowndes County*, 354 F.3d 414, 423 (5th Cir. 2004) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999)).

*Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017). And, here, Perez has not plausibly alleged that Ford's actions are fairly attributable to the State by, for example, "'alleg[ing] specific facts to show' ... that [Ford] and public actors entered into an agreement to commit an illegal act." *Gordon v. Neugebauer*, 57 F. Supp. 3d 766, 774-76 (N.D. Tex. 2014) (quoting *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008)).

Next, only the four named deputy-sheriff defendants are alleged to have been personally involved in the September 2017 incident regarding Perez's legal mail. The alleged liability of the Sheriff, by contrast, is merely vicarious. *See* Dkt. No. 3 at 3 (alleging that the Sheriff "[i]s aware of his deputie[s'] actions"); Dkt. No. 7 at 4

(alleging that the Sheriff "fail[ed] to enforce rules and regulations on his officers/deputies"). The claims against the Sheriff should therefore be dismissed. *See Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) ("Under § 1983, officials are not vicariously liable for the conduct of those under their supervision" – instead, "[s]upervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992))); *Hinojosa v. Livingston*, 807 F.3d 657, 668 (5th Cir. 2015) ("Relying on *Monell[ v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978),] 'we have held that supervisory officials may not be found vicariously liable for the actions of their subordinates under § 1983.'" (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (en banc); citation omitted)).

Perez's claims based on how his grievances were handled also should be dismissed, as the United States Court of Appeals for the Fifth Circuit has held that inmates do not have a constitutionally-protected interest in having grievances resolved to their satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (per curiam) ("As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."); *see also Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (per curiam) (holding that the plaintiff had no actionable 42 U.S.C. § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances); *Lijadu v. I.N.S.*, Civ. A. No. 06-0518, 2007 WL

837285, at *3 (W.D. La. Feb. 21, 2007) ("[D]etainees do not have a constitutionally protected right to a grievance procedure – much less one that complies with their own personal preferences." (citation and internal quotation marks omitted)).

A prison system is not required to establish grievance procedures, and the failure of a jail or prison to establish or adhere to a grievance procedure does not rise to the level of an actionable constitutional claim. *See* 42 U.S.C. § 1997e(b); *see also Bradford v. Kuykendall*, No. 6:04-cv-565, 2005 WL 1521016, at *5 (E.D. Tex. June 24, 2005) (citing *Geiger*, 404 F.3d at 374). Accordingly, inmates have no basis for a civil rights lawsuit simply because they are unhappy with grievance procedures. *See id.*

What remain are Perez's claims related to the actual destruction of his legal mail. *See* Dkt. No. 7 at 5 ("As for my legal mail (documents), only a few pieces were given to me that were all crumbled up and I did forward them to my court appointed attorney here in Navarro County, even then she ... has never mentioned anything in regards to this issue or tried to assist me.").

> Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). However, prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement. *See id.* at 354-55. Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury" – that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002). To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy." *See id.* at 416-17.

*Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) (footnote omitted); *see also McDonald v. Steward*, 132 F.3d 225, 230-31 (5th Cir. 1998) ("Prisoners have a constitutional right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel.... [But,] before a prisoner may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate 'that his position as a litigant was prejudiced by his denial of access to the courts.'" (citations omitted)); *Wells v. Thaler*, 460 F. App'x 303, 308 (5th Cir. 2012) (per curiam) (An access-to-courts claim is "not cognizable unless the inmate's position as a litigant was actually prejudiced by the denial of access. To prove an 'actual injury,' an inmate must prove that his ability to pursue a claim was hindered or barred by the defendant's actions." (citations omitted)).

To allege an access-to-courts claim that is "more than mere hope," it must "be pled in a manner that satisfies Fed. R. Civ. P. 8(a)." *Monroe*, 536 F.3d at 206 & n.6 (citing *Harbury*, 536 U.S. at 416-18). And that claim may be "arguable" – not merely hopeful – when it is based on the alleged seizure or destruction of legal materials. *Williams v. Thurmer*, No. 07-C-0456, 2007 WL 2436880, at *6 (W.D. Wis. Aug. 21, 2007). But, here, Perez alleges that he is represented by counsel in "the only case he points to as being affected by the missing materials," and he, moreover, "does not identify how the lost materials would have assisted him or counsel in his criminal" case in a more-than-cursory manner. *Kadamovas v. Lockett*, No. 2:11-cv-258-WTL-MJD, 2017 WL 67858, at *3 (S.D. Ind. Jan. 6, 2017); *see* Dkt. No. 7 at 1, 5 (alleging, without further explanation, that, because of the defendants' actions, he was not "able to gather

and send all necessary documents to [his] attorney to prove [his] innocence" but that, after he "did forward [the remaining documents to his] court appointed attorney," she "never mentioned anything in regards to this issue"). Perez therefore fails to allege a plausible claim that he was denied access to the courts based on the alleged destruction of certain legal materials. *See, e.g., Robbins v. State of Okla. ex rel Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." (quoting *Twombly*, 550 U.S. at 556)).

Further, to the extent that Perez alleges that the destruction of these legal materials supports a claim for depravation of procedural due process, that claim is barred by the "[t]he *Parratt/Hudson* doctrine," which "dictates that a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy." *Brooks v. George Cty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996) (citing *Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991) (en banc) (discussing, in turn, *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986), and *Hudson v. Palmer*, 468 U.S. 517 (1984))). Like here, "this doctrine is most frequently applied when prisoners (or others) are deprived of their personal property but have the opportunity to seek return of their property (or be made whole) through a post-deprivation process." *LeBeouf v. Manning*, 575 F. App'x 374, 379 (5th Cir. 2014) (per curiam) (citations omitted); *see id.* at 480 ("[A] § 1983 action for deprivation of procedural due process is barred under the

*Parratt/Hudson* doctrine only if, *inter alia*, the deprivation was unpredictable or unforeseeable and pre-deprivation process would have been impossible or impotent to counter the state actor's particular conduct." (citation omitted)).

## Recommendation

The Court should dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 22, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE